Our first argument is San Pedro versus Silver Point Capital. We have Vincent Levy. Is it Levy or Levy? It's Levy. Good morning, Your Honor. Okay. Mr. Levy, so you've got 10 minutes, but you reserved two for rebuttal. So you ready to go? Yes, Your Honor. Okay. Go ahead. The floor is yours. Thank you. Good morning, and may it please the Court. We're here on an appeal, on a cross-appeal, and I'd like to begin with the points on our appeal. The respondents are respondents to a 1782 subpoena, and through various motions they were ordered to produce documents relevant to the subpoena and responsive to the subpoena. The documents, some of them were withheld, however, on privilege ground, and this appeal, our appeal, concerns their effort to withhold those documents on privilege ground. The first point that arises on our appeal, and which we raised below, is whether the respondents, and here I'm talking about just the funds, had satisfied and met the burdens that the law imposes with respect to making and stating a claim of privilege. Under Rule 45E2 of the Federal Rules of Civil Procedure, and this Court's case in construction products, it was their burden to identify facts going to each of the elements of the subpoena that they did not meet below, and under construction products, having failed to do that, they should have been ordered to produce the documents because they did not meet the law's burden. So that's our first point. The second point, and I just want to make sure I cover them in this three minutes, is that those documents were subject to be turned over anyway, for two reasons. First, the documents, or substantially all of them, were documents that, to the extent they reflected privilege information, the privilege belonged to CODERI because the advice was given to CODERI's directors in their capacity as directors, and because my client, the petitioner, was also a director of CODERI at all relevant times under the law, he should have been entitled to see those documents under federal common law and the Delaware cases unless there's a showing of open adversity, and because there was no showing of open adversity below, no effort to make that showing, those documents should have been turned over. Excuse me. You have one more minute. Thank you. A subcategory of those documents are documents that were shared with G3M, which is a third-party consulting firm. G3M is a third-party. The courts below allowed the response to withhold the documents on the basis of the so-called Covell exception and the Covell case, which permits parties to withhold documents shared with third parties if the third party acts as an interpreter. As further clarified, though, in the Ackard case that came later, that exception only applies in the event that the third party is acting as an interpreter, and if the third party is merely providing information, which is what happened here, it is not privileged. And here, the courts below justified the effort to withhold the documents on the basis that they were providing useful information, and that is no different than what happened in Ackard, and Ackard held that that was not enough. So I know my three minutes are up. I don't know whether I should keep going or whether, Judge Sullivan, you will start questioning me. Well, let's stop for a minute. We'll take a deep breath. I'm going to ask my colleagues, if they have questions, I'll begin with Judge Winter. Judge Winter, anything at the moment you wish to add? I would like to ask why a log is necessary when there's been in-camera review of the documents themselves. Very often a privilege, I ask this because very often a privilege log doesn't say what's in the documents. It just asserts that it's a communication for advice. But why is it necessary? So just two points. First, the court's cases and Rule 45 makes clear that it is the burden of the withholding party to provide sufficient information as to all the documents to explain why those are withheld. And this is important here because in the court below, there was a teleconference and counsel for the fund respondents took the position that before the documents could be turned over, they would have to be reviewed in-camera and the magistrate judge invited the respondents to provide their documents in-camera, but the fund respondents only provided about 100 documents selected by them. We objected. And the point is that in the court below, there was no effort by the magistrate court, the judge or the district court to, there was no holding that the respondents had met their burden as to the documents not reviewed in-camera. So, you know, the first point, of course, is the court's president's required, the rule required. And the second point is, even if it excused, if in-camera review excused what were appropriate excuse, in this case, that would only apply to about 100 documents. And right. So your second point is that there are documents that were neither reviewed in-camera, nor the subject of a privileged log, and you want those documents. Correct. I think all the documents were identified on the log, but our position is that they were not sufficient. There wasn't sufficient information and they were not reviewed in-camera. There are documents that were not reviewed in-camera and for which there is what you claim to be an insufficient privileged log. Correct. Sorry, that is correct. That is the case for 95 percent of the documents. Well, 95 percent, 100 is a lot less than 95 percent. So 100 documents were reviewed, about 100, and there were about 1,300 documents on the log. So about 90 percent were not reviewed, 90, 95 percent. And you want them. Correct. And as to the ones that were reviewed in-camera, because there were substantive problems with their privileged claim, namely that because the petitioner was a director and because the ones that were reviewed were, in fact, the ones shared with the third-party G3M, those should be turned over, even if they otherwise reflect privileged information, because the privilege was broken. OK, thank you. All right, Judge Wesley. Yeah, just to add to this, what was it that you would have us do? Just send it back and ask them to particularize those privileged log entries that are not specific enough? Is that what you want? No, I think, Your Honor, because. Go ahead. Well, because they didn't satisfy the burden that the law imposes, Construction Products makes clear that the remedy is that the claim will not be recognized. So you would have us go through. Well, say we disagree with you that some of the particularizations in the privileged log are specific enough such that they are privileged, or at least they're specific enough to qualify for being adequate under the privileged log. Because you said the district court made no finding as to the adequacy of those entries? Correct. The court made no finding. I know that my time is up. Well, that's not going to save you. You can answer. No, no. Thank you. I appreciate that. So two points. The court made no finding. So this court could either remand for finding or could order production. It could also order production of the documents on the substantive grounds that I identified, namely that because the documents reflect information that belongs, that advice that was given to directors of the company and the petitioner is a director, the court would not have to reach the issue of the adequacy of the log if it agreed with us on the other two points. You'd still have, then you'd have us go through the 1200 or 1300 documents to see if it fits in that broader category.  No, Your Honor. I think it's common ground that the documents fit into those categories. So if the court ordered the respondent to turn over the so-called director documents and the so-called G3N documents, we would be satisfied with that ruling. All right. Fair enough. Thank you. Let me ask a quick question. I mean, look, the bottom line here is I don't think courts of appeals are typically well suited to get into the weeds of discovery requests and privilege assertions. And so in this case, there was a dispute as to whether the log was adequate, followed by then an order to confer and that sort of narrow the issues, followed by calls with the magistrate judge, and then followed by in-camera review of a category of documents, which were, I think, designed to inform the judge's decision with respect to all the documents. The standard here is what? Abuse of discretion, right? That's right. I will just one correction, Your Honor. I think the substantive documents was not meant to inform the district court's decision. The district court, the magistrate judge said he had ruled on the adequacy of the log and the burden before reviewing the documents in camera. And the magistrate judge made no finding and did not have any legal conclusion or holding as to the balance of the documents, did not say that he was rejecting this argument on the basis of the in-camera review. So there's just a failure to hold him to the burden. And I'm not saying that this court should review the log in the first instance. The legal error was a failure to hold them to the burden. And again, the court would not have to reach this issue if it applied, if it reviewed the legal ruling that the magistrate judge and the district court applied with respect to all the documents, namely the propriety of withholding documents from a fellow director, which would settle the issue without the court having to engage in this issue. And what law are we applying for that? I mean, you'd be asking us to determine that a director is entitled to everything that the other directors are looking at, even when it's a dispute among the directors about sort of terminating two directors. So what law are we looking to? I think it was common ground below, at least in the first instance that a court would look at federal common law, and that's consistent with federal rule of evidence 501. And so it would fall on this court in determining whether the district court below had applied the correct law to determine what the federal rule of common law is with respect to one director withholding documents from another. And for the reasons stated in our papers, we think this court, as a matter of federal common law, should follow the well-reasoned decisions of the Delaware courts, which have been adopted by a substantial number of district courts. And in fact, the only district court decisions going the other directions speak to the ability of a former director to obtain documents in connection with an individual capacity suit. And here we're dealing with a current director, at least at the time of the motion practice, who is prosecuting a case in his capacity as a director, not as an individual. Okay. All right, Mr. Levy, you've reserved two minutes for rebuttal. We'll now hear from Mr. Loft. Thank you, Your Honor. Thank you. Mr. Loft, are you there? Hello? Counsel for appellee. Hello. Sorry, I was still on mute. Oh, that's all right. Okay. You're all set. I'm all set. Thank you. Okay, let's go. Thanks. Duane Loft, on behalf of respondents, appellees, may it please the court. First, with respect to the privilege log issue, a few clarifying points in case it wasn't clear. First of all, all of the documents that were withheld on privilege appear on the privilege log. In the first version of the log, that was 2,600 documents. The court asked, what would the court have to do if it determined that the log was inadequate? It would have to send the issue back to have further amendments made to the log. Well, that actually happened, because in the subsequent rounds of colloquy with the court and meet and confer, over 450 entries, the very entries that are being complained about now, were amended. Second clarifying point. There was a comment that the court did not make a finding as to the adequacy of the log, but there was such a finding. It was in the court's January 10th ruling. This is the special appendix at 56 in footnote two, where the court said during the status conference, the court denied petitioner's request to grant the motion to compel based solely on alleged untimeliness and insufficiency of respondent's privilege log. The record reflects that the court grappled with these issues extensively during colloquy with counsel, reviewed factual affidavits, reviewed the log, and reviewed documents, and satisfied itself that the log was adequate. In reviewing privilege logs, this court's presence made clear that context matters. And the context here was that a subset of the Coderi board hired the Linklater's firm to advise it about the termination of petitioner and his brother from their executive roles at the company. That's the core issue in the foreign proceeding here. The termination took place over two key board meetings. And in that context, when you see a reference to attorney-client communication regarding board meeting with Linklater's, that is sufficient to permit a reasonable inference that the documents are potentially privileged. That's the standard under construction products. And that standard was met here. Excuse me. You have one more minute. Thank you. The second issue with respect to the director access documents, where this court is pressing an open adversity standard that appears not in federal common law, but only under certain Delaware cases. It doesn't make sense to apply that rule here. It doesn't make sense to apply that rule as a matter of federal common law, but certainly not here. There's no dispute about the fact that in certain circumstances, directors can withhold documents from other directors, when withholding those documents from directors would be in the company's best interest. Here, the legal advice was about the termination of Petitioner and his brother. It couldn't possibly be in the company's best interest to show those documents to Petitioner and his brother. They are inherently conflicted on that issue. So the court, federal common law properly recognized that documents may be withheld from directors where showing those directors those documents would not be in the company's best interest. And that's certainly the case now, where the Petitioner and his brother are no longer directors of the company. The only purpose they would have for these documents is to use them to sue the company. That could not be in the company's best interest that is not consistent with their roles as fiduciaries. And the law properly recognizes that privilege may be asserted in this situation. All right, let's take a pause there. And I'll turn to Judge Winter to see if he has any specific questions for you. No, I don't have any questions. All right, Judge Wesley. Yeah, excuse me. You mentioned page 56 of the Special Appendix. And you say that there I will find the fact that the court had made an indication as to the adequacy of the law. Did I mishear you there? Is that what you said? That's what I said, Your Honor. Okay, thank you. It's at footnote two. Okay, that's very good. I found it. Thank you very much. Thank you. I have no further questions. Okay. I mean, there's certainly a lot of time spent in the briefs regarding whether or not this whole thing is moot because the Spanish court said they're not interested in these documents or not interested in receiving them in evidence. Nobody's really spoken about that. It's in the briefs. But maybe I'll just ask you to respond.  Well, that's a respondent's argument. That's principally our argument. We don't believe there's any point in allowing access to these documents, even if the log was deficient, even if there was no privilege, because there's no proper use anymore for these documents. The Spanish court at a January 16th hearing explicitly unambiguously rejected the admission of any further evidence, including certain of the discovery obtained in these proceedings that petitioner attempted to use before the Spanish court. Now, that strikes me as sort of the sort of thing that courts of appeals get into. We don't generally get into the very highly context-specific approach to the privilege log and the in-camera discussions. That's something that magistrate judges and district judges seem to be better suited to. But I guess here we'd be interpreting the statute and deciding what is use and interpreting the case law that says that use can go beyond admissibility. And so here, that was the finding, right? That this, although it may not be admissible in the Spanish proceeding, it might be relevant to inform the litigation and to inform appeals of rulings in the Spanish proceeding. Specifically, the court found below that it might still satisfy the use requirement because it might be allowed to, quote, prepare witnesses, craft questions, and present the petitioner's case. But why is that inaccurate? Because the touchstone under this court's precedent is that the evidence be used to insert, to be inserted, to be admitted into the proceeding. And that, as a matter of undisputed fact, can no longer happen. There is no precedent that would allow the use standard under 1782 to be satisfied simply to allow strategy to be created about a document, thoughts to be created about a document, work product to be created about a document. Instead, the courts have been clear that this is about insertion of the evidence into the foreign proceeding. And that can't happen here. Well, insertion of the evidence into the proceeding sounds a lot like admissibility, but the courts haven't said that it's limited to admissibility. So maybe I'm missing something. But what do you mean? The difference between admissibility and insertion into the proceeding. At the outset of a 1782 proceeding, before there's been an attempt to use the evidence in the foreign proceeding, courts do not apply an admissibility requirement because the courts in 1782 don't yet know whether the evidence will or will not be admitted in the foreign proceeding. But that is different from our situation where we do know because now we're in a posture where the evidence has been attempted to be used in the foreign proceeding and it's been rejected. And that is exactly the type of situation when courts have found that there is no longer the use. There is no longer satisfaction of the use requirement. Well, excuse me, this judge, the foreign court said that it wasn't necessary for the police, but didn't say that it couldn't be used to inform a witness or in some way inform the preparation of the case, did it? That's correct, Your Honor. Well, I mean, so don't we look to the intel factors to decide? And I mean, the purpose of intel cautions against using 1782 to be a contrary purposes to the law and the use of evidence or not the use of evidence, but the use of information in a foreign tribunal. And that 1782 shouldn't be used to circumvent the policies that are inherent within those foreign proceedings. But I didn't take the situation in the Spanish courts to be a declaration that this evidence was somehow or this information somehow could never be used or never be considered, not necessarily evidentiary, but in terms of the use within the proceeding itself, did it? Well, I think under intel, the relevant factor is the receptiveness of the foreign tribunal to the discovery. Right. And the court, as the record made clear below, expressed, we think pretty clearly that they were not receptive to the evidence. They said we do not consider the evidence necessary, nor useful, nor pertinent. That's a quote. Another another quote is that the admission of what that's our appendix at 1218 paragraph thirty five. Got it. The admission of more documentary evidence is not appropriate, the court said. Well, but I mean, the standard in this circuit for this statute is whether or not the documents can be employed with some advantage or serve some use in the proceeding. And so some advantage seems to be broader than what you're you're describing here. Well, I believe that's language from the Accent to Light case. But in Accent to Light, the court went on to make clear that the what it's about is the petitioner's procedural right to submit the requested documents to the magistrate. The foreign tribunal must take and hear new evidence. And if it can't, then the discovery is not for use in the proceeding. And I think that's also in the Uromipa case. All right. Let's I think we're over time, but we just have any other questions. Yeah, I have. I apologize, Judge Sullivan. I haven't. No, not at all. Just a couple more. I'm going to turn it over to you. That's very kind of you. On the G3M documents, tell me those documents were never submitted in the appeal, have they? Were they, counsel? We have no way of seeing what it is that that you've asserted the privilege against and that the district court agreed with you, do we? That's correct. The in-camera documents have not been made part of the record on appeal, is my understanding. Is it the case that G3M was merely gathering facts and information about the operations of all the petitioners and their conduct within the corporation? G3M were the subject matter experts about the corporation's, the client's information, which distinguishes this situation from the Ackert case that the other side is urging, where a lawyer went and sought out an investment banker who had pitched a transaction to understand new facts that his client did not have so that he could take those facts back and inform his legal advice to his client. But here, G3M was helping the lawyers interpret the client's own facts, not gathering new facts from a third party. Okay. Thank you. All right. Thank you very much. We'll now go back to Mr. Levy for two minutes of rebuttal. Thank you. If I could just start with just by a couple of points. First, although this does concern a privilege dispute, our appeal is about whether the district court applied the correct legal standard, particularly with respect to the director documents under federal DOCANA law and whether the district court properly applied Ackert. And you heard the respondents counsel say that G3M was, quote, the subject matter expert in the company. All it was doing was providing information about the company. And the record makes that clear. I'll direct you to A921 and 922 and 923. That's where the respondents described the documents that were reviewed in camera. And the respondents noted that they were provided to G3M for necessary factual input, for expertise on the company's structure, for verification of factual accuracy. And it's not enough to mouth the word expertise to bring this case within the scope of Ackert. With respect to their point that this case is moot, AccidentDelight makes quite clear that the documents don't have to be introduced as evidence. That, indeed, would be contrary to the court's ruling that there's no admissibility requirement. Excuse me. I'm sorry. You have one more minute. I'm sorry. Thank you. Only the information has to be introduced into the proceeding. And that can happen through questioning. And the Spanish court did not rule that the information couldn't be used or was not relevant. The Spanish court said that it would not accept into evidence certain documents. That's quite as far from what respondents are saying. And, indeed, the respondents are separately prosecuting an appeal, which was argued in January before Judge Sullivan and two other judges, in which they're saying that the district court below erred in not giving them documents. So I don't know how they can take both positions. I did want to touch briefly on timing, which is the trial in Spain is scheduled for May 20th. The courts are closed in Spain. Our trial has not been postponed. So it remains on the counter for May 20th. So these documents remain at present based on my knowledge of some urgency. All right. Well, we'll reserve decision. Thank you both very much. Well argued. Thank you, Your Honor.